UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL NICHOLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:11CV1864 TIA |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income benefits under Title XVI of the Act. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

### I. Procedural History

On February 9, 2009, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits, alleging that his disability began on September 30, 2008. (Tr. 9, 111-20) Plaintiff alleged that he was disabled due to back problems, seizures, depression, and alcoholism. (Tr. 51) The applications were denied on April 22, 2009, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 48-56) On October 20, 2010, Plaintiff testified at a hearing before the ALJ. (Tr. 25-47) In a decision dated November 23, 2010, the ALJ found that Plaintiff had not been under a disability from September 30, 2008, through the date of the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is therefore substituted for Michael J. Astrue as the Defendant in this action.

decision. (Tr. 9-20) After considering additional evidence, the Appeals Council denied Plaintiff's request for review on September 19, 2011. (Tr. 1-3) Thus, the decision of the Appeals Council stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel, who provided an opening statement. Counsel stated that Plaintiff was 51 years old with a high school education. He had no past relevant work within the past 15 years. Plaintiff had mental impairments, brachial plexopaty, and back pain. Counsel further stated that Plaintiff last used alcohol 1 ½ months ago and was a binge drinker, as opposed to a daily alcohol drinker. (Tr. 27-29)

Plaintiff also testified at the hearing. Upon questioning by the ALJ, Plaintiff stated that he recently made $100 painting a couple rooms for his sister-in-law, washing her car, and mowing the grass. He lived with his mom and his sister, but mostly with his mom. (Tr. 30)

Plaintiff's attorney then questioned Plaintiff, who testified that he suffered from depression for as long as he could remember. He received treatment through the VA at John Cochran and Jefferson Barracks. He saw Dr. Guzemondo for his mental disorders. Plaintiff acknowledged long periods of time between appointments and attributed that to difficulty finding a ride. He lived about 100 miles from the VA. He experienced depression every day. Every morning, his hands shook. He had many things running through his mind, and he was unable to focus or concentrate. Plaintiff slept in spurts, although Trazodone helped at times. When he got up most mornings, he couldn't even take a shower or get dressed. In addition, Plaintiff testified that he did not go around other people because he was uncomfortable and nervous. He thought they were talking about him. Plaintiff did not even attend family events. Plaintiff further testified that he could not handle any amount of stress. He tried

2

to put things out of his mind. In addition, he usually did not finish what he started. Plaintiff stated that he was in no position to make any decisions. (Tr. 30-34)

Plaintiff also reported problems with his left arm. He began having problems in 2008 when he injured his shoulder by falling. He experienced constant numbness, and his left hand locked up. According to Plaintiff, doctors informed him that he would never have full use of his left arm due to permanent nerve damage. Plaintiff rarely used his left hand and relied mostly on his right hand. Although he experienced left hand numbness most of the time, he occasionally felt sharp pains when his hand locked. Plaintiff also experienced back pain, although x-rays were negative. His pain would come and go. Plaintiff testified that some mornings, he woke up with middle back pain. One morning, he bent over to tie his boots and felt sharp pains shooting through his back. He was able to walk, stand, and sit. He had no difficulty lifting with his right hand. He had problems with caring for his personal needs because he had no desire to do anything. Also, his hand bothered him when lacing his boots. (Tr. 34-37)

Plaintiff stated that he did not visit with friends or relatives, nor did he belong to any churches or organizations. He was able to do laundry, wash dishes, and cook once in awhile. He did not grocery shop because he could not be around a lot of people. Plaintiff typically woke up around 6:00 a.m. and went to bed around 10:00 p.m. After he woke up, Plaintiff sat outside then helped his mother do dishes or cook breakfast. Mostly, he just sat with her, or he went to his sister's house and sat on the porch. Plaintiff watched TV but did not read because he was unable to concentrate. Even with the TV on, Plaintiff did not pay attention. (Tr. 38-39)

Plaintiff tried to maintain sobriety over the last several years. Although he had periods without drinking, he would binge drink when he felt down or depressed and would drink constantly

3

for two to three days. Plaintiff then stopped because he had no place to live, as his family would not allow him in their homes. He was sick for weeks after these binges. Plaintiff stated that he could not go months at a time without drinking anything at all. However, even when he did not drink, his depression stayed the same. (Tr. 39-40)

The ALJ reexamined Plaintiff regarding his binge drinking. Plaintiff testified that he was sick for two weeks after binging because his body could no longer handle it. Plaintiff estimated that he went on binges four times a year, for a total of eight weeks that he was unable to work. (Tr. 41)

Mr. Bucello, a vocational expert ("VE") also testified at the hearing. The ALJ first asked the VE whether someone who had to be off work for eight weeks due to an alcohol problem was able to do work. The VE answered that no work would be available for such an individual. The ALJ then asked the VE to assume a person who could lift medium weight with his right hand; could sit and stand at a medium job; could not lift with his left hand; and had slight limitation on his ability to concentrate such that he could only do one to two step tasks. Given this hypothetical, the VE testified that the person could perform light, unskilled work including hand sorter, hand assembler, and hand packer. (Tr. 41-43)

Plaintiff's attorney posed additional limitations, including difficulty dealing with even low stress and difficulty completing tasks because of problems concentrating, causing the person to be off-task 50% of the workday. The VE answered that no work would be available for this individual. To be employable, the individual would need to be on-task 84% of the workday. That figure did not take into account the three breaks: two 15-minute breaks and a 30-minute lunch. If Plaintiff were off-task one-third of the day, it would not diminish the jobs the VE mentioned. However, no employer would tolerate an employee being off-task during the weekday. The ALJ then struck the VE's

4

testimony regarding 50% because the hypothetical was not based on evidence in the record. (Tr. 43-46)

In a Disability Report – Adult, Plaintiff stated that he had trouble concentrating, was in a total state of depression, thought about drinking all the time, and had constant back pain. He stopped working on September 30, 2008 because of his condition. He last worked from 2004 to 2008 as a car detailer. (Tr. 141-44)

Plaintiff also completed a Function Report – Adult, reporting that he watched TV most of the day, walked outside once in a while, took his antidepressant medication every morning, and walked back and forth a lot. He used to be able to do any jobs but could no longer concentrate on anything. His sleep was poor, and he tossed and turned all night. Plaintiff was able to take care of his personal needs but needed reminders to take his medication. He did not prepare meals, but he did laundry and washed dishes. Plaintiff did not shop or drive. He had no money to pay bills and had never been able to handle a checking account. Although he watched TV often, he could not concentrate because his mind wandered and thought of depressing things. He infrequently went to AA meetings when he was not so depressed. He also went to relatives' homes. However, Plaintiff testified that he did not like being around other people. His conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, remember, complete tasks, and concentrate. Plaintiff believed he could walk 200 feet before needing to rest for 10 minutes. He could not pay attention for long and did not finish what he started. He could follow written and spoken instructions but did not get along with authority figures. Further, Plaintiff testified that he could not handle stress or changes in routine. He had a fear of dying. (Tr. 177-84)

5

Plaintiff's mother, Carole Nichols, also completed a Function Report Adult – Third Party. She stated that she spent 5 hours a day and weekends with Plaintiff, going to the store, fixing meals, washing dishes, and going for rides. During the day, he did little things around the house, watched TV, and took naps. He had problems sleeping and needed reminders to take his medications. Plaintiff did not prepare meals because he was unable to concentrate. Ms. Nichols stated that Plaintiff could do laundry, sweep, scrub floors, and wash dishes. He needed reminders that his chores did not have to be perfect. Plaintiff did not shop and could not understand banking. Plaintiff's interests included watching TV, helping cook, and helping wash the car. He sometimes went to AA meetings or family dinners. Ms. Nichols opined that Plaintiff's conditions affected his ability to understand, complete tasks, remember, and concentrate. He had no problems walking. He was unable to concentrate for very long, and he did not get along well with authority figures. He could follow written instructions but did not follow spoken instructions as well. In addition, Ms. Nichols stated that Plaintiff did not handle stress or changes in routine very well. (Tr. 154-62)

### III. Medical Evidence

On November 28, 2008, Plaintiff was seen at the St. Louis, Missouri Veterans Administration Medical Clinic ("VA") to begin health care. The examining nurse, Linda Kaiser, noted that Plaintiff had been jailed five times for alcohol related incidents and recently completed inpatient rehabilitation. Plaintiff believed that depression led to the drinking binges. He had been unable to keep a job and was trying to get disability for his alcohol abuse and depression. Nurse Kaiser assessed depression and alcohol abuse and planned to refer Plaintiff to a psychologist for an antidepressant. He denied any suicidal or homicidal ideation. (Tr. 47-48)

6

On December 5, 2008, Terry Dunn, Ph.D, psychologist at the observed Plaintiff's mood was depressed because of unemployment, unsuccessful attempts to quit drinking, a lack of income, and general life situation. On mental status exam, Plaintiff was alert, attentive, fully oriented, and very cooperative and pleasant. He appeared sober, and his insight regarding alcohol appeared good. Dr. Dunn assessed alcohol dependence; depressive disorder versus alcohol induced mood disorder; and rule out dysthymic disorder. Dr. Dunn scheduled a psychiatric consult. In addition, Dr. Dunn opined that Plaintiff's symptoms may overestimate depression severity because recent alcohol abuse and situational factors were likely contributing to the mood disturbance. (Tr. 250-51, 277)

On February 25, 2009, Antonina Gesmundo, M.D., staff psychiatrist at the VA, treated Plaintiff for depression, anxiety, poor sleep, and alcohol dependence. Plaintiff reported that he was sleeping better with Trazadone but remained depressed and anxious. He had been sober since December 3, 2008. Dr. Gesmundo observed Plaintiff's mood/affect were abnormal, and he was anxious with a blunted affect. He denied delusions/ hallucinations, as well as suicidal/agressive thoughts. Plaintiff reported trouble concentrating. He was alert with fair grooming and hygiene. Dr. Gesmundo prescribed citalopram for depression and assessed a GAF score of 50. Plaintiff was to return in 3 months. (Tr. 238-40)

On April 21, 2009, Mark Altomari, Ph.D, State agency medical consultant, completed a Mental Residual Functional Capacity Assessment form. He opined Plaintiff had moderate limitations in his ability to understand and remember detailed instructions; carry out detailed instructions; and maintain attention and concentration for extended periods. (Tr. 285-7) In addition, a Psychiatric Review Technique completed on that same date showed an assessment of affective disorders and substance addiction disorders that caused only mild functional limitations. (Tr. 288-98)

7

On November 23, 2009, Dr. Gesmundo listed Plaintiff's problems as alcohol abuse, depression, alcohol dependence, tobacco use disorder, and GERD. Plaintiff reported that he remained depressed and was uncomfortable around people. His mood was down, and he was not sleeping. Trazodone did help with sleep. Plaintiff also stated that he had a lot on his mind such as no job and no place to live on his own. Dr. Gesmundo observed that Plaintiff's mood/affect were abnormal and assessed a GAF of 55. (Tr. 527-30)

On June 7, 2010, an x-ray of the cervical spine revealed minimal osteophyte formation at C4-5. Views of the lumbar spine were normal, and the chest x-rays showed no active pulmonary disease. (Tr. 463-65)

Plaintiff underwent an Esophageal Motility Study on October 8, 2010. The results demonstrated advanced spastic disorder fulfilling criteria for "spastic nutcracker"; and incomplete LES relaxation, which could explain dysphagia. (Tr. 563)

A nerve conduction study performed on December 6, 2010 revealed electrodiagnostic evidence of left ulnar neuropathy without definite site of entrapment. In addition, the right ulnar sensory nerve from fifth digit was examined for comparison and was abnormal. Asifa N. Sufi, M.D., recommended evaluation of right ulnar nerve as well. (Tr. 569)

### IV. The ALJ's Determination

In a decision dated November 23, 2010, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through March 31, 2010. He had not engaged in substantial gainful employment since September 30, 2008, his alleged onset date. The ALJ further found that Plaintiff had the severe impairments of gastroesophageal reflux disease, dysphagia, depression, alcohol abuse, back pain, cervical radiculopathy, brachial plexopathy, and a peripheral nerve disease.

However, he did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 9-13)

After carefully considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, except for no lifting with the left hand. Plaintiff also had slight problems with concentration and was limited to unskilled work with one to two step tasks. In forming this RFC, the ALJ assessed Plaintiff's testimony, medical treatment records, medical opinions, function reports from Plaintiff and his mother, Plaintiff's medications, and his work history. The ALJ found that the medical evidence, opinion of state agency expert, and Plaintiff's own admissions supported the RFC assessment. (Tr. 13-18)

The ALJ further found that Plaintiff had no past relevant work. He was a younger individual on the alleged onset date but was closely approaching advanced age. He had at least a high school education and could communicate in English. Considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which Plaintiff could perform. Such jobs included hand sorter, hand assembler, and hand packer, as the VE testified. Therefore, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from September 30, 2008, through the date of the decision. (Tr. 18-20)

### V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

9

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robert v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs.,

10

957 F.2d 581, 585-86 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[2] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak, 49 F.3d at 1354.

## VI. Discussion

Plaintiff raises three arguments in his Brief in Support of the Complaint. First, he argues that the ALJ failed to reconcile the Mental Residual Functional Capacity Assessment with the VE's testimony. Second, Plaintiff asserts that the ALJ failed to elicit testimony from the VE to clarify an

---

[2]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

11

apparent conflict with the Dictionary of Occupational Titles ("DOT"). Finally, Plaintiff contends that the ALJ failed to properly consider depression. Defendant, on the other hand, argues that the ALJ properly questioned the VE and properly considered Plaintiff's alleged depression. Further, Defendant asserts that no conflicts exist between the DOT and the jobs identified by the VE. The undersigned finds that substantial evidence supports the ALJ's disability determination in this case such that the decision of the Commissioner denying benefits should be affirmed.

### A. The VE's Testimony

Plaintiff first argues that the ALJ erred by failing to resolve Dr. Altomari's finding that Plaintiff had a moderate limitation in his ability to maintain attention and concentration for extended periods with the VE's testimony that employers would not tolerate an employee being off-task. Defendant, on the other hand, argues that the hypothetical question properly limited Plaintiff to slight limitations on his ability to concentrate such that he could only do one and two step tasks.

"A hypothetical question is properly formulated if it sets forth impairments 'supported by substantial evidence in the record and accepted as true by the ALJ.'" Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005) (quoting Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001)). Further, where substantial evidence supports an ALJ's finding that a plaintiff's complaints were not credible, the ALJ may properly exclude those complaints from the hypothetical question. Id.

In the instant case, the ALJ included only those impairments and limitations that she found credible. While the non-examining consultative psychologist found moderate limitations to concentration, persistence, or pace, the RFC finding by the ALJ is "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting

12

Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

Here, the ALJ thoroughly assessed all of the medical evidence, the Plaintiff's and a third party's allegations, and Dr. Altomari's Mental Residual Functional Capacity Assessment. (Tr. 14-18) The ALJ noted Plaintiff's infrequent and conservative medical treatment, lack of objective findings, lack of restrictions from treating physicians, ability to help with household chores, and poor work history. (Id.) The ALJ also relied on Dr. Altomari's opinion which indicated Plaintiff had the ability to understand, carry out, and remember simple instructions; respond appropriately to supervisors, co-workers, and in usual work settings; and deal with routine changes in the work environment. (Tr. 17) Thus, the RFC reflected slight problems with concentration and a limitation to unskilled work with one to two step tasks. (Tr. 13) "Based on this record, the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [Plaintiff's] deficiencies in concentration, persistence or pace." Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001). Therefore, the undersigned finds that "[t]he hypothetical was sufficient because it represented a valid assessment of [Plaintiff's] . . . limitations consistent with the evidence in the record." Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). Because the hypothetical question properly set forth Plaintiff's limitations, the VE's testimony constituted substantial evidence upon which the ALJ could properly rely in determining that Plaintiff was not disabled.[3] Id.

## B. Conflict with the DOT

Next, Plaintiff contends that the ALJ erred in failing to elicit testimony from the VE to clarify

---

[3] The ALJ did credit Dr. Altomari's assessment of moderate limitations to concentration, persistence, or pace. (Tr. 12) However, as Defendant correctly notes, the ALJ relied on Dr. Altomari's Psychiatric Review Technique and Mental Residual Functional Capacity Assessment to determine whether Plaintiff's impairments met or medically equaled a listed impairment at step 3 of the evaluation process. (Tr. 11-13)

13

a conflict with the DOT. The undersigned finds that the ALJ properly relied on the VE's testimony to find that Plaintiff was able to perform jobs existing in significant numbers in the national economy. Although the transcript indicates that the ALJ did not ask the VE about any possible conflicts between the VE's testimony and the DOT, the Court finds this error was harmless, as no conflict existed. See Renfrow v. Astrue, 496 F.3d 918, 920-21 (8th Cir. 2007) (finding the ALJ's failure to follow SSR 00-4p and ask the VE about possible conflicts between his testimony and the DOT harmless where no such conflict appeared to exist).

The ALJ's hypothetical included lifting with only Plaintiff's right hand and not the left. The VE answered that, given those lifting restrictions, Plaintiff could work as a hand sorter, hand assembler, and hand packer. (Tr. 42-43) The Plaintiff apparently misunderstands the ALJ's RFC finding, which only restricted *lifting* with the left hand, but not the *use* of his left hand. (Tr. 13) The VE testified to the aforementioned light, unskilled jobs as consistent with the DOT and existing in significant numbers in the State of Missouri. Because no conflict existed between the DOT and the VE testimony, which pertained to use of the hands, any error by the ALJ in failing to ask about possible conflicts is harmless. Thus, the VE's testimony, which was based on a proper hypothetical question containing Plaintiff's credible limitations, does not conflict with the DOT. As such, the ALJ was not required to obtain evidence explaining the alleged conflict, and substantial evidence supports the ALJ's determination that Plaintiff can perform work that exists in significant numbers in the national economy. Renfrow, 496 F.3d at 921.

### C. The ALJ's Consideration of Plaintiff's Depression

Last, Plaintiff argues that the ALJ failed to properly consider Plaintiff's depression because the record contained objective findings. Defendant, on the other hand, asserts that the ALJ properly

14

assessed Plaintiff's depression, noting that his depression was severe but not disabling. The undersigned agrees with the Defendant.

Plaintiff maintains that objective medical evidence included diagnoses of depression, prescription medication for depression. However, the ALJ acknowledged Plaintiff's prescription medication regimen for depression, as well as the lack of side effects. (Tr. 16, 18) Indeed, Plaintiff reported some success with Trazadone, and Dr. Gesmundo continued Plaintiff's medications, increasing dosages as needed. (Tr. 530) "An impairment which can be controlled by treatment or medication is not considered disabling." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (citation omitted); see also Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009) ("There is substantial evidence that, when taken as directed, the medication [plaintiff] was prescribed was successful in controlling his mental illness."). Further, the episodes of anxiety and depression were related to life stressors, including lack of income, lack of a job, and lack of housing. (Tr. 529) As such, substantial evidence in the record demonstrates that Plaintiff's depression and anxiety were situational and did not result in significant functional restrictions. Dunahoo v. Apfel, 241 F.3d 1033, 1039-1040 (8th Cir. 2001); Shipley v. Astrue, No. 2:09CV36MLM, 2010 WL 1687077, at *12 (E.D. Mo. April 26, 2010).

Plaintiff relies primarily on Pate-Fires v. Astrue, 564 F.3d 935 (8th Cir. 2009). In Pate-Fires, the Eighth Circuit Court of Appeals found that, based on the facts of that case, the ALJ played doctor in assessing the plaintiff's mental impairments. Id. at 946-47. However, in the present case, the ALJ relied on the minimal mental health treatment and lack of functional restrictions to properly determine that Plaintiff's depression was not disabling. (Tr. 16) "The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in [Plaintiff's] mental capabilities

disfavors a finding of disability." Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000).  Contrary to Plaintiff's assertion, the ALJ may rely on the lack of functional restrictions imposed by treating physicians to make a disability determination.  See Lacina v. Astrue, No. 3:09-cv-00124, 2010 WL 3732936, at *12 (S.D. Iowa Sept. 17, 2010) (finding that the ALJ's reliance on lack of conclusions by treating physicians that Plaintiff was unable to work was proper).

Further, while the Plaintiff argues that the ALJ should have re-contacted Dr. Gesmundo, the ALJ is required to further develop the record only where the medical evidence is insufficient to determine whether the Plaintiff is disabled.  Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994). Stated another way, the ALJ is not required "'to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'" Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) (quoting Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)).  In the instant case, the ALJ did not need to contact Dr. Gesmundo, as all the medical records, including hers, showed essentially normal mental status exams.  (Tr. 15, 232-33)  The ALJ may rely on facts, observations, and medical conclusions that bear directly on the extent of a plaintiff's ability to function in the work place.  Cox v. Astrue, 495 F.3d 614, 620 (8th Cir. 2007).  Because the medical records were sufficient to assess Plaintiff's limitations from depression, the ALJ was not required to contact Plaintiff's psychiatrist for further clarification.

Therefore, based on the above, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff was not under a disability from September 30, 2008 through the date of the decision.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social

security benefits be **AFFIRMED**.  A separate Judgment in accordance with this Memorandum and Order is entered this same date.

/s/ Terry I. Adelman<br>UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of March, 2013.